**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NUMBER 14-20301-CR-MORENO**

**UNITED STATES OF AMERICA,**

       Plaintiff,                            **Courtroom 13-3**

  vs.                                             **Miami, Florida**

**ANNILET DOMINGUEZ,**                      **September 29, 2014**

       Defendant.
_____

**SENTENCING PROCEEDINGS**
**BEFORE THE HONORABLE FEDERICO A. MORENO**
**UNITED STATES DISTRICT JUDGE**
_____

**APPEARANCES:**

**FOR THE GOVERNMENT:**     **ANNE McNAMARA, AUSA**
                                  United States Department of Justice
                                  Criminal Division, Fraud Section
                                  1400 New York Avenue, NW
                                  Washington, DC 20530
                                                           202.304.2946

**FOR THE DEFENDANT:**       **ANTHONY J. NATALE, AFPD**
                                    Federal Public Defender's Office
                                    150 West Flagler Street
                                    Suite 1500
                                    Miami, Florida 33130
                                                           305.533.4246

**REPORTED BY:**               **GILDA PASTOR-HERNANDEZ, RPR, FPR**
                                    Official United States Court Reporter
                                    Wilkie D. Ferguson Jr. US Courthouse
                                    400 North Miami Avenue - Suite 13-3
                                    Miami, Florida  33128    305.523.5118
                                    gphofficialreporter@gmail.com

```
 1                        TABLE OF CONTENTS
 2                                                               Page
 3
 4
     Reporter's Certificate ..................................... 19
 5
 6
 7
 8
 9                            EXHIBITS
10   Exhibits                  Marked for          Received
                              Identification      in Evidence
11
     Description                Page    Line      Page    Line
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1        (The following proceedings held at 10:20 a.m. were
2   interpreted by Margarita Lloyd Godsk and Guiomar Emedan-Lauten:)
3              THE COURT:  Let me start with the person in custody.
4              United States of America versus Annilet Dominguez, Case
5   Number -- everyone else sit down, please -- 14-20301-Criminal.
6              On behalf of the Government.
7              MS. McNAMARA:  Good morning, Your Honor.  Anne McNamara
8   on behalf of the United States.
9              THE COURT:  On behalf of the defendant.
10             MR. NATALE:  Good morning, Your Honor.  Anthony Natale
11  from the Federal Public Defender's Office on behalf of
12  Ms. Dominguez, who is using the aid of a Spanish interpreter.
13             THE COURT:  She didn't have an interpreter before.
14             MR. NATALE:  Judge, she --
15             THE COURT:  I continued this case, didn't I, at your
16  request?
17             MR. NATALE:  Yes, yes.
18             THE COURT:  She entered a guilty plea in English.
19             MR. NATALE:  That's correct.
20             THE COURT:  We had the first sentencing in English.
21             MR. NATALE:  That's correct.  In fact --
22             THE COURT:  Okay.  I just wanted to make sure.  She
23  wants an interpreter.
24             The interpreter will state her name for the benefit of
25  the record.

1         THE INTERPRETER:  Good morning, Your Honor.  Margarita
2    Lloyd Godsk, Certified Federal Interpreter.
3         THE COURT:  Okay.  This case was continued before.  We
4    had an issue -- did I allow the probation officer?  I'm so
5    sorry.
6         THE PROBATION OFFICER:  Good morning, Your Honor.  Alma
7    Martinez on behalf of Probation.
8         THE COURT:  Okay.  Good morning again, Ms. Dominguez.
9         As you all know we're here for sentencing.  I reset the
10   case.  The original guidelines were 78 to 97 months.  The
11   guidelines now from the probation officer are 63 to 78 months.
12        I have read and reviewed the entire Presentence
13   Investigation Report, the second and third addendums to the
14   Presentence Investigation Report, the defendant's objections,
15   the original objections and everything else in this particular
16   case.
17        I assume, Ms. Dominguez, you have read the report as
18   well; am I right?
19        THE DEFENDANT:  Yes, that is correct.
20        THE COURT:  And I did sentence the codefendant, Garcia,
21   right?
22        MS. McNAMARA:  Yes, Your Honor.
23        THE COURT:  What did I give her?
24        MS. McNAMARA:  70 months, Your Honor.
25        THE COURT:  70 months.  All right.  Any objections to

1  the guidelines as now computed --
2         MR. NATALE:  Yes, Your Honor.
3         THE COURT:  -- from the Government?
4         MS. McNAMARA:  No, Your Honor.
5         THE COURT:  From the defense?
6         MR. NATALE:  Yes, Your Honor.  We object to the
7  three-level enhancement.
8         THE COURT:  For what?
9         MR. NATALE:  For role in the offense.  Okay.
10        THE COURT:  What do you want to say?  And the
11 Government says -- well, how much did I give Ms. Garcia as far
12 as the enhancement?
13        MS. McNAMARA:  Ms. Garcia got plus 4 for an enhancement
14 and the Government agrees that probation recommendation that the
15 defendant today, Ms. Dominguez, get three points.
16        THE COURT:  Which is one less.  All right.
17        Go ahead.  What do you want to say, Mr. Natale?
18        MR. NATALE:  Your Honor, at this point, based on U.S.
19 v. Martinez, the Court has been told that there are certain
20 factors to look at:
21        Did the person exercise decision-making authority?  No.
22 Participation in the offense?  She was an employee of the
23 codefendant's.
24        THE COURT:  Wasn't she the administrator?
25        MR. NATALE:  Your Honor, she had --

```
 1           MS. McNAMARA:  She --
 2           THE COURT:  I'm sorry.  I'm asking the defense lawyer.
 3   I apologize.
 4           MR. NATALE:  Your Honor, she had the title of
 5   administrator, but she didn't recruit any of the accomplices.
 6   She didn't have a claim to a larger share of the money.
 7           THE COURT:  Who paid the patient recruiters?
 8           MR. NATALE:  That was paid by the --
 9           THE COURT:  Who did it personally?
10           MR. NATALE:  In person?
11           THE COURT:  Yeah.  That wasn't part of her duties as an
12   administrator?
13           MR. NATALE:  It was part of the duties to help
14   facilitate that, Your Honor.
15           THE COURT:  I don't understand what you mean, to help
16   facilitate.
17           MR. NATALE:  Because different people would deliver the
18   money to different --
19           THE COURT:  What did she do regarding the patient
20   recruiters?  She didn't pay them kickbacks and bribes?
21           MR. NATALE:  What she did is that she was able to
22   process the papers that allowed them to pay kickbacks and
23   bribes.
24           THE COURT:  What did the Government say during the plea
25   colloquy?
```

1           MS. McNAMARA:  Your Honor --

2           THE COURT:  I'm sorry.  Mr. Natale.

3           What did the Government say during the plea colloquy

4  regarding that?

5           MR. NATALE:  Your Honor, I believe that they said that

6  she did a number of activities in the plea colloquy.

7           THE COURT:  And what did she answer when I asked her if

8  she agreed with what the Government said?

9           MR. NATALE:  She had said yes.

10          THE COURT:  All right.

11          MR. NATALE:  Your Honor, however, if you look at the

12  third addendum to the PSI report -- and one of the reasons for

13  the continuance was because there was factual inaccuracies --

14  the addendum, which is basically conceded by the Government and

15  the defense says, the actions taken by Ms. Dominguez were

16  directed by and at the instruction of codefendant Garcia and --

17          THE COURT:  Oh, no question, Garcia is more culpable.

18  That's why she got four levels.  If the Government were asking

19  for a four-level increase, I would disagree with the Government.

20          MR. NATALE:  Your Honor, the reason why I say I think

21  it's important to look at the facts that are in the PSI is

22  there's not one reference to any person that she managed,

23  supervised or directed.

24          THE COURT:  Does the Government wish to present

25  witnesses?  We'll schedule this and have witnesses presented.

```
 1  That's what we'll do.  Is your client going to testify as to
 2  what she did?
 3          MR. NATALE:  Yes, Your Honor, she will testify.
 4          THE COURT:  Okay.  We'll do that.  When can you bring
 5  in anybody else to testify?  If that's what you want to do,
 6  that's what we'll do.
 7          MR. NATALE:  Your Honor, I think the Government agrees.
 8  This is the Government's agreed statement of the facts that
 9  she --
10          THE COURT:  What she said at the plea colloquy and your
11  client admitted is that your client was the administrator.  I'm
12  going to overrule the objections and find that just with the
13  plea colloquy is enough to enhance her because your client said
14  yes.
15          Objection, overruled.  Any other objections?
16          MR. NATALE:  Your Honor, there's no other objection.
17  We would just --
18          THE COURT:  Okay.  And then I find that those are the
19  appropriate guidelines.  I overrule the objection.
20          What does the Government wish to say before I impose
21  sentence under the 3553(a)?
22          MS. McNAMARA:  Your Honor, we merely request -- we've
23  been in ongoing discussions with defense counsel.  The defendant
24  has cooperated in this case as has her codefendant.  The
25  Government is --
```

```
 1              THE COURT:  Is there a 5K1?
 2              MS. McNAMARA:  There is no 5K1; however, defense
 3   counsel has been virtually assured of a Rule 35.  The Government
 4   is not prepared to go into detail at this time, because those
 5   investigations are not yet resolved, though imminent.
 6              THE COURT:  So what do you want me to sentence her to?
 7              MS. McNAMARA:  We believe that the guideline range is
 8   appropriate.  That would be a sentence today of 63 months.
 9              THE COURT:  What do you wish to say regarding your
10   client?
11              MR. NATALE:  Your Honor, I would like to say that I
12   think we would request a variance based on her cooperation.
13   Your Honor, she's been debriefed four to five times.
14              THE COURT:  Did I give a variance to the codefendant
15   who was also debriefed?
16              MS. McNAMARA:  No, Your Honor.
17              THE COURT:  Okay.
18              MR. NATALE:  She provided detailed information
19   regarding how things were done and how patients were tracked
20   within the system.  She provided names of recruiters and their
21   patients as far as connecting them to the two for the
22   Government.
23              She provided information regarding the activities of
24   other unindicted co-conspirators with the codefendant and their
25   family members, approximately nine to ten other people,
```

1  involving other activities that they did, and information
2  regarding the owners and operators of another fraudulent
3  business that's located in Cape Coral, as well as an additional
4  medical business in which unindicted co-conspirators were
5  involved.
6          During her cooperation, she provided documents and
7  other information which was not previously known to the
8  Government.
9          In fact, Your Honor, what she presented was many
10 documents to show that she was not processing and writing checks
11 on the vast majority of the time of one of the instances.  In
12 fact, that's one of our objections to Paragraph 11, which was
13 actually adopted in the third addendum, which said that the
14 majority of the deposits and the money that was taken out was at
15 the direction and done by people other than her.
16         In fact, during that time, two things were going on.
17 She was at the hospital with her son and, in fact, an unindicted
18 co-conspirator wrote a letter regarding the fact that she was no
19 longer going to be the administrator during that period of time.
20 During that time they actually put in place another individual
21 who was the administrator.
22         I think, Judge, that all of that information -- and the
23 Government has asked me and I have concurred not to give the
24 specific names of the people.
25         THE COURT:  I'm not going to consider cooperation

1  because of the Rule 35 that is expected.  I'll consider it then
2  just like I'm going to do it with the codefendant.
3             MR. NATALE:  Your Honor, the only concern that we have
4  is that we have no guarantee from the Government that they will,
5  and that once this day is over with, then we are at the mercy of
6  the Government and she has given them all of this information
7  and documentation with which they have no problems whatsoever.
8             I think that it really is a situation where it should
9  be considered for her, because I think in many other people it
10 has been considered when the Government is either unsure whether
11 they're going to file a Rule 35 or not.
12            THE COURT:  I don't think that's what she said.  I may
13 have misunderstood, but I thought you said something like
14 virtually guaranteed.
15            MS. McNAMARA:  That's correct, Your Honor.
16            THE COURT:  That's what I heard, but I may have --
17 maybe I need an interpreter; I don't know, but that's what I
18 heard.
19            MS. McNAMARA:  If I could also --
20            THE COURT:  I've never heard that before, by the way.
21 This is the first time in 24 years that I hear that.
22            MR. NATALE:  I understand that, and I hope that that's
23 the same thing as a guarantee.
24            THE COURT:  I don't know.  We can't guarantee anything
25 except what, death and taxes.  But I'm not going to consider the

1  cooperation now.
2           Anything else you want to say?
3           MR. NATALE:  Nothing further.  I believe she would like
4  to make some comments to the Court.
5           THE COURT:  Okay.  Go ahead, Ms. Dominguez, what do you
6  want to say?
7           THE DEFENDANT:  Your Honor, first of all, I would like
8  to apologize or rather ask forgiveness from Your Honor, from the
9  Government and from my family.  I am deeply ashamed for
10 everything that I've done, and I'm going to make use of the time
11 that I have now to improve myself, to take all the courses that
12 I'm able to take and to become an individual who can contribute
13 to society.  I want to be able to support and help my family and
14 my sons in particular.
15          THE COURT:  When did you come to the United States?
16          THE DEFENDANT:  When I was 13 years old.
17          THE COURT:  Okay.  How much money did you make?
18          THE DEFENDANT:  Well, it was a regular salary.  I was
19 making somewhere between 17 and $18 an hour.
20          MR. NATALE:  Your Honor, she also received 10 percent
21 of any checks that she might have cashed.  I think the total
22 amount may have been between 60 to $100,000 that she received
23 and there are no other assets that she had that could even be
24 possibly considered for forfeiture because she's living, unlike
25 the codefendant, she's living with her family and there were no

1  assets that could be turned over at all.
2  THE COURT: Well, what happened to the 2011 and 2012
3  tax returns? Whatever happened to that?
4  THE DEFENDANT: They have been prepared, done. I
5  asked for an extension for the one for the year 2013.
6  THE COURT: Okay. That's why I asked for '11 and '12
7  only. Are they in the Presentence Investigation Report? I
8  don't see them.
9  THE PROBATION OFFICER: They are not, Your Honor.
10  THE COURT: Okay. Why not?
11  THE PROBATION OFFICER: I was not afforded a copy of
12  them.
13  THE COURT: Okay. How come that wasn't -- I gave you
14  extra time. Why wasn't that supplemented if that's an issue?
15  MR. NATALE: What we did was, there were releases that
16  were signed for them to get those particular --
17  THE COURT: Oh, she doesn't keep income tax returns.
18  MR. NATALE: I don't know. I could try to track down
19  those returns, Your Honor.
20  THE COURT: Oh, I don't want to continue this again.
21  MR. NATALE: I don't want to continue it either.
22  THE COURT: I was just wondering how much money she
23  declared on her income tax for '11 and '12. How much did you
24  declare?
25  THE DEFENDANT: For 2011, my salary.

```
 1              THE COURT:  Did you include the 10 percent that you
 2   would get extra for recruiting patients to commit Medicare
 3   fraud?
 4              THE DEFENDANT:  I did not do any cashing of checks in
 5   2011.  That was in 2013.  So I didn't get the 10 percent.
 6              THE COURT:  And in 2012, you didn't either?
 7              THE DEFENDANT:  Not that year, either.
 8              THE COURT:  Okay.
 9              THE DEFENDANT:  As a matter of fact, in 2012, I spent
10   most of the time at the hospital with my son.
11              MR. NATALE:  Your Honor, I also have the check to pay
12   for the assessment.  They wouldn't let me pay it in advance
13   because they said they had no record, and therefore, they
14   couldn't take the check.
15              THE COURT:  Of $100.
16              MR. NATALE:  No, $400.
17              THE COURT:  $400.  Sorry.  I apologize.  When the fraud
18   in this case was of $6,257,142, I should be impressed with the
19   $400?
20              MR. NATALE:  No, I think Your Honor what you should be
21   impressed is that she's taken what little money she has to try
22   to fulfill what her obligations are.  And I think that this
23   Court is well aware that the unindicted people in this
24   Indictment as well as the codefendant --
25              THE COURT:  I can't sentence unindicted people.
```

1       MR. NATALE: I'm not asking you to sentence them,
2  Judge. I'm just saying that the person who was sentenced had
3  huge amounts of money that they received, had property and all
4  sorts of things which they seem to have been able to maintain.
5  I only give that as a reference so there's not a gross disparity
6  between the two individuals. Right now, there's really --
7       THE COURT: Okay. And what was her relationship with
8  Ms. Garcia?
9       THE DEFENDANT: She was an employee and she was a
10 friend.
11      THE COURT: Oh, a friend, right? Okay. Usually,
12 that's a very important relationship. You've got to be careful
13 who your friends are, especially when she says -- now who opened
14 the corporation, Quick Employee Management?
15      MR. NATALE: She did at the direction --
16      THE COURT: By she, you mean Ms. Dominguez, your
17 client?
18      MR. NATALE: At the direction of Ms. Garcia, and the
19 Government, I think would corroborate that.
20      THE COURT: No, I agree. It's part of Paragraph 10 of
21 the Presentence Investigation Report.
22      I think what I probably have to conclude is that I was
23 too lenient on Ms. Garcia. So whenever the Rule 35 comes
24 around, I'll take whatever substantial assistance she provides
25 and the reduction that's appropriate may have to include the

1 fact that this Court believes it was too lenient on Ms. Garcia
2 on the date of the original sentencing.
3      Now that I know more about the case, which is, of
4 course, always -- the more time we have, the more time we have
5 to reflect on things and the more knowledge and information that
6 we have.
7      I overrule the objections.  I think she is less
8 culpable than Ms. Garcia obviously, but she did open the
9 corporation, Quick Employee Management.  Sure, it was at the
10 direction of her friend, Ms. Garcia.  She was the administrator
11 of Professional Home Health.  Sure, it was at the direction of
12 Ms. Garcia.  But she was also involved in making sure and
13 offering and paying kickbacks and bribes to Medicare
14 beneficiaries in exchange for the use of their Medicare
15 beneficiary numbers to file claims for home healthcare.
16      Based upon the plea colloquy and the factual basis,
17 which she agreed to, I do think a sentence within the guidelines
18 is appropriate in this case, and that's why, it is the judgment
19 of this Court that you, Annilet Dominguez, be committed to the
20 custody of the Bureau of Prisons for a period of 68 months.
21 Upon release from imprisonment, you'll be placed on supervised
22 release for three years.  The sentence will be current on each
23 of Counts 1, 3, 4 and 5.  The supervised release will also be
24 concurrent.  No fine will be imposed because you have to pay
25 restitution jointly and severally in the amount $6,257,142 plus

```
 1  $400 special assessment.
 2           Now that I have imposed the sentence, I assume you've
 3  maintained an objection to the three-level enhancement that I
 4  have given her as the administrator of Professional Medical Home
 5  Health and also as the incorporator of Quick Employee Management
 6  based upon the plea colloquy and it will be preserved and you
 7  have 14 days to file the Notice of Appeal.
 8           Do you understand that, Ms. Dominguez?
 9           THE DEFENDANT:  Yes, Your Honor.
10           THE COURT:  Okay.
11           MS. McNAMARA:  Your Honor, one point of clarification.
12  We are seeking a forfeiture money judgment in the amount of
13  $6,257,142.
14           THE COURT:  It's a meaningless document, but you want
15  me to enter that judgment?
16           MS. McNAMARA:  In order to do the same that we did with
17  the first defendant.  To correct the record, the Government was
18  seeking --
19           THE COURT:  That defendant has something that you can
20  get.  This defendant doesn't have that much.
21           MS. McNAMARA:  Correct, Your Honor.
22           THE COURT:  You want me to enter it, I'll enter it.
23  It's meaningless, but I'll enter it.  It won't be the first
24  meaningless thing I do.
25           MS. McNAMARA:  And second, I could not hear if that was
```

```
 1  63 or 68 --
 2         THE COURT:  68.  68 months.
 3         MS. McNAMARA:  Thank you, Your Honor.
 4         THE COURT:  68, underline 8; not the bottom of the
 5  guidelines, but the low middle.
 6         THE PROBATION OFFICER:  Your Honor, may I?
 7         THE COURT:  Oh, but because of that, of course, it's 60
 8  months.  I have to go below the guidelines for Counts 3, 4 and
 9  5.
10         THE PROBATION OFFICER:  That's correct.
11         THE COURT:  And 68 months on Count 1.  You're
12  absolutely right.  That was my mistake.
13         60 months, five years, on Counts 3, 4, 5 to run
14  concurrent.  Count 1, 68, but the total sentence is 68 months,
15  of course.
16         MR. NATALE:  Your Honor, would you recommend that there
17  be a designation as close to South Florida as possible?
18         THE COURT:  Well, I'll let the Bureau of Prisons decide
19  that.
20         MR. NATALE:  And, Your Honor, will the PSI be amended
21  to reflect the changes in the addendum?
22         THE COURT:  The third addendum is there.  The second
23  addendum is there.  Everybody is part of the record.
24         MR. NATALE:  Your Honor, but what happens is they do a
25  final PSI that they send to the Bureau of Prisons.
```

1            THE COURT:  They just include the addendums.  They

2    don't have to retype it.  It's all there with the original

3    objections, the other objections, the first addendum, the second

4    addendum, the third addendum.  If we continue it, we may even

5    have a fourth addendum.  And they can do what they want.

6    They're the executive, not me.  So I'll let them decide what to

7    do.

8            Okay.  Thank you.

9            MS. McNAMARA:  Thank you, Your Honor.

10           THE COURT:  The interpreter is excused.

11       (The hearing was concluded at 10:41 a.m.)

12

13                     C E R T I F I C A T E

14       I hereby certify that the foregoing is an accurate

15   transcription of proceedings in the above-entitled matter.

16

17   _____              _____
         DATE                     GILDA PASTOR-HERNANDEZ, RPR, FPR
18                                Official United States Court Reporter
                                  Wilkie D. Ferguson Jr. U.S. Courthouse
19                                400 North Miami Avenue, Suite 13-3
                                  Miami, Florida  33128    305.523.5118
20                                gphofficialreporter@gmail.com

21

22

23

24

25